**Mandamus Dismissed; Appeal Reversed and Remanded; Majority and Dissenting Opinions filed May 15, 2012.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-11-00526-CV
_____

## IN RE FREEMAN GRAVITT, RELATOR

### ORIGINAL PROCEEDING
### WRIT OF MANDAMUS

_____

## NO. 14-11-00075-CV
_____

## DINAH PLANT AND FREEMAN GRAVITT AS NEXT FRIEND AND ON BEHALF OF JAMES GRAVITT, Appellants,

## V.

## CLEVELAND REGIONAL MEDICAL CENTER AND KEITH SPOONER, M.D., Appellees.

_____

### On Appeal from the 190th District Court
### Harris County
### Trial Court Cause No. 2008-52450

---

## MAJORITY   OPINION

In this consolidated petition for mandamus and restricted appeal, Freeman Gravitt contends that the trial court abused its discretion by denying his motion under Texas Rule of Civil Procedure 306a(5) to extend the trial court's plenary power and allow him to pursue post-judgment motions after the trial court granted the defendants' Rule 12 motion, removed Gravitt's attorneys, and dismissed his case without notice to him. We reverse and remand for further proceedings.

I

In 2008, attorneys John Phelps and John Leija of the Law Firm of Phelps & Leija filed a healthcare-liability claim identifying relator/appellant Freeman Gravitt and Dinah Plant as next friends of the minor children of Tina Gravitt, deceased. Leija's name appeared first on the pleadings. The plaintiffs alleged that Tina Gravitt died as a result of the medical negligence of the real parties in interest/appellees Cleveland Regional Medical Center and Keith Spooner, M.D. (collectively, defendants).

In December 2009, Dr. Spooner filed a motion under Texas Rule of Civil Procedure 12 to require Phelps and Leija to show their authority to sue on behalf of one of the minor children, James Gravitt.[1] The Rule 12 motion, along with Dr. Spooner's motion to compel the deposition of James's father, Freeman, was set for submission on January 4, 2010. When no response to the Rule 12 motion was received, the trial court ordered Phelps and Leija to appear before it on February 8, 2010, to show their authority to represent James. The court also ordered Freeman to appear for deposition at his counsel's office. Phelps and Leija did not present him for deposition.

The trial court again considered Dr. Spooner's Rule 12 motion on February 22, 2010, and signed an order that day finding that Phelps and Leija had failed to show authority to act on behalf of James. The order also directed Phelps and Leija to present

---

[1] Although another minor child was named in the original petition, only James Gravitt remained in the lawsuit by the time of the relevant events. For clarity's sake, we will refer to Freeman, Tina, and James Gravitt simply by their first names.

2

Freeman for deposition and warned that, if they did not, the court would "likely strike the pleadings of Freeman" as next friend of James as authorized by Rule 12.

Leija presented Freeman for deposition in March 2010. In his deposition, Freeman testified that he did not authorize Dinah Plant, Leija, Phelps, or the Phelps & Leija law firm to pursue claims on behalf of James. He also testified that the first time he spoke to attorneys with the Phelps & Leija law firm was a week or two before his deposition.

About three months later, Dr. Spooner filed a "First Supplemental Motion to Show Authority" along with a notice of oral hearing and a certificate of service. The certificate of service and fax confirmation sheet reflected that the documents were successfully served on Phelps and Leija at the Phelps & Leija law firm.

Dr. Spooner's supplemental motion to show authority was set for hearing on July 19, 2010. Phelps and Leija filed no response and failed to appear at the hearing. That same day, the trial court signed an order finding that the plaintiffs filed no response, the plaintiff's counsel had not appeared despite receiving notice, and the plaintiffs' attorneys did not show authority to act on behalf of James. The trial court also ordered "that John Phelps and John Leija shall not be allowed to appear on behalf of James Gravitt through Dinah Plant as next friend." The trial court further ordered that if new counsel with authority did not appear by 5:00 p.m. the next day, July 20, 2010, the plaintiffs' pleadings "shall be stricken pursuant to Rule 12."

On July 21, 2010, the trial court signed an order striking the plaintiffs' pleadings and dismissing the case against the defendants. There is no evidence in the record that the district clerk failed to send notice of the dismissal to the Phelps & Leija law firm.[2] More than two weeks later, on August 8, 2010, the district clerk received a letter from Phelps requesting that the clerk change his address, phone, and fax numbers in the court's records. Phelps also notified the defendants' attorneys that his contact information had changed.

---

[2] The record includes a copy of the notice sent to Cleveland Regional Medical Center as an exhibit to Dr. Spooner's supplemental motion to show authority.

On August 26, 2010, Phelps filed a "Motion to Substitute Attorney in Charge and Plaintiff's Verified Motion to Reinstate" requesting that Phelps be substituted for Leija as attorney in charge and that the case be reinstated. Accompanying the motions were Phelps' affidavit and an "Attorney/Client Agreement" between Freeman and the Phelps & Leija law firm, purportedly giving the firm authority to pursue a claim for the death of Tina on behalf of James. The agreement was signed by Freeman and Phelps on May 24, 2008.

On September 3, Phelps filed a "First Amended Verified Motion to Reinstate, Substitute Attorney in Charge and Alternative Motions to Appoint an Attorney Ad Litem or Guardian Ad Litem." Phelps asserted that on August 22, he discovered that a motion to show authority had been filed and that the case had been dismissed on July 21; the next day, August 23, he mailed the motion to substitute attorney in charge and verified motion to reinstate. The motion was supported by Phelps' affidavit certifying that the facts in the motion were true.

On September 22, Phelps supplemented his motion to reinstate with an affidavit executed by Freeman on September 7. In the affidavit, Freeman states that he is the biological father and legal guardian of James, and he has authorized Phelps to pursue his son's case.[3] The trial court heard the motions on September 14, 2010. Phelps attended the hearing along with attorney Mark Midani of Midani, Hinkle & Cole, L.L.P. Phelps requested that he substitute for his partner, Leija, who had become ill. Midani also requested that he be allowed to appear as the plaintiffs' counsel, even though Phelps' motion to substitute did not include such a request. At the conclusion of the hearing, Phelps complained that he was the attorney of record and he was being precluded from presenting his case, even though he acknowledged that he had discovered the order removing him from the case on August 22, 2010. After reminding Phelps that he was no longer the attorney of record, the trial court denied Phelps' post-judgment motions.

---

[3] The supplemental filing also included a power of attorney signed by Freeman on April 13, 2004, purporting to give Dinah Plant authority to act as guardian of James "[f]or medical and all purposes with James in mind." The parties disagree about the significance, if any, of this exhibit.

4

On September 22, 2010, Midani filed a "Rule 306A(5) Motion and Motion for Emergency Hearing" arguing that the plaintiffs did not receive notice of either the trial court's July 19 order removing their attorneys or the July 21 order dismissing their case until forty-eight days after the dismissal order was signed on July 21. The motion was accompanied by a second affidavit signed by Freeman. In this affidavit, Freeman stated that he learned his son's lawsuit had been dismissed in a conversation with Phelps on September 7, 2010. He also stated that he signed an affidavit the same day authorizing Phelps to represent his son until another attorney could be found, and that on September 16, 2010, he signed an agreement with Mark Midani and the Midani, Hinkle & Cole law firm to pursue the lawsuit against the defendants.

The trial court held a hearing on Midani's motion on September 30, 2010. After hearing the parties' arguments, the trial court acknowledged that it was "troubled" by the fact that notice went to the attorney who had been taken off the case for lack of authority and the parties themselves did not get notice. The trial court requested additional briefing on the issue, and the parties complied.

On October 11, 2010, the trial court signed an order denying the Rule 306a(5) motion to reinstate the case. The trial court's order did not state when it found Freeman or his attorneys first received notice or acquired actual knowledge that the dismissal order was signed. This consolidated petition for writ of mandamus and restricted appeal followed.

II

In the petition for writ of mandamus and restricted appeal, Freeman argues that when the trial court removed his attorneys from the case under Rule 12, he became a pro se plaintiff entitled to receive individual notice that his case was dismissed. The defendants respond that Freeman failed to show that his trial attorneys did not timely receive notice, and therefore notice to Freeman's attorneys is notice to Freeman. To resolve this issue, we must determine whether notice to attorneys removed under Rule 12 may be imputed to the

5

client or if, as Freeman urges, personal notice to him is required because the Rule 12 ruling renders him a pro se plaintiff. On the facts of this case, we conclude that once Freeman's attorneys of record were removed, he was entitled to notice that his claim was dismissed. We therefore grant Freeman's restricted appeal and dismiss his petition for mandamus as moot.

## A

Rule 12 provides that a party may, by sworn written motion stating that he believes an attorney is prosecuting or defending a suit or proceeding without authority, cause the attorney to be cited to appear before the court and show his authority to act. Tex. R. Civ. P. 12. At the hearing on the motion, the burden of proof is on the challenged attorney to show sufficient authority to prosecute or defend the suit on behalf of the other party. *Id.* If the challenged attorney fails to show authority, the court "shall refuse to permit the attorney to appear in the cause, and shall strike the pleadings if no person who is authorized to prosecute or defend appears." *Id.*

Rule 12's purpose is to discourage and cause the dismissal of suits brought without authority so as to protect parties from groundless suits. *See Sloan v. Rivers*, 693 S.W.2d 782, 784 (Tex. App.—Fort Worth 1985, no writ). At least one court has concluded that once the trial court finds the challenged attorney has not met his burden of proof, it is mandatory that the trial court follow Rule 12's requirements. *See In re Salazar*, 315 S.W.3d 279, 283 (Tex. App.—Fort Worth 2010, orig. proceeding).

Rule 306a(1) provides that the periods within which parties may file various post-judgment motions and trial courts may exercise their plenary jurisdiction all run from the date the judgment is signed. Tex. R. Civ. P. 306a(1). Rule 306a(3) requires clerks to "immediately give notice to the parties or their attorneys of record" when a final judgment or other appealable order is signed. Tex. R. Civ. P. 306a(3). If within twenty days after the judgment or other appealable order is signed, a party adversely affected by it or his attorney has neither received the notice required by rule 306a(3) nor acquired actual knowledge of

6

the order, then with respect to that party all the periods mentioned in 306a(1) shall begin on the date that such party or his attorney received such notice or acquired actual knowledge of the signing, whichever occurred first, but in no event shall such periods begin more than ninety days after the original judgment or other appealable order was signed. Tex. R. Civ. P. 306a(4). To take advantage of the extended time periods provided in paragraph (4) of Rule 306a, the party adversely affected is required to prove in the trial court, on sworn motion and notice, the date upon which the party or his attorney first either received notice of the judgment or acquired actual knowledge of its signing, and that this date was more than twenty days after the date the judgment was signed. Tex. R. Civ. P. 306a(5).

B

A party may bring a restricted appeal if the party: (1) filed notice of the restricted appeal within six months after the judgment was signed; (2) was a party to the underlying lawsuit; (3) did not participate in the hearing that resulted in the judgment complained of and did not timely file any postjudgment motions or requests for findings of fact and conclusions of law; and (4) error is apparent on the face of the record. Tex. R. App. P. 26.1(c), 30; *Alexander v. Lynda's Boutique,* 134 S.W.3d 845, 848 (Tex. 2004). Here, the parties dispute elements (1), (2), and (4). We address each in turn.

1

It is undisputed that Freeman's notice of appeal was filed January 17, 2011, within six months after the judgment was signed, as required for a restricted appeal. The defendants contend, however, that this court should dismiss Freeman's restricted appeal because Midani, who filed the notice of appeal and the brief in this court, never filed a motion for substitution of counsel or notice of representation in the trial court. *See* Tex. R. Civ. P. Rule 10 ("If the attorney in charge withdraws and another attorney remains or becomes substituted, another attorney in charge must be designated of record with notice to all other parties in accordance with Rule 21a."). Thus, the defendants maintain, the notice of appeal was "void and untimely." We disagree.

7

Nothing in Rule 10 requires or even suggests that a motion or notice another attorney files is void or untimely unless the rule's procedural requirements are met. *See Blanche v. First Nationwide Mortg. Corp.*, 74 S.W.3d 444, 450 (Tex. App.—Dallas 2002, no pet.); *see also City of Tyler v. Beck*, 196 S.W.3d 784, 787 (Tex. 2006) (per curiam) (holding post-judgment motions filed by new attorney rather than designated attorney in charge was not ineffective because procedural rule was not followed). Here, Midani appeared in the trial court on behalf of the plaintiffs when he filed Freeman's 306(a) motion after Freeman's attorneys were removed from the case. Moreover, Freeman's affidavit stating that Midani and his law firm were authorized to represent the plaintiffs supported the motion. Additionally, Midani signed the notice of appeal and included his state-bar number and contact information in the notice. *See* Tex. R. App. P. 6.1 ("Unless another attorney is designated, lead counsel for an appellant is the attorney whose signature first appears on the notice of appeal.").

And tellingly, the defendants do not contend any failure to follow the procedures for formal substitution in the trial court somehow prejudiced or harmed them. We conclude that even if the procedural requirements of Rule 10 were not followed, the plaintiffs' notice of appeal is not untimely or void.

2

The defendants next contend that Freeman cannot satisfy the requirement that he was a party to the underlying lawsuit. They argue that when the trial court determined that Phelps and Leija lacked authority to bring suit on the plaintiffs' behalf and concomitantly struck the plaintiffs' pleadings and dismissed the case, the trial court's actions "effectively ameliorated the underlying lawsuit, rendering it as if it had never been filed." As support for this proposition, the defendants cite *In re B.E.A.R.*, No. 05-02-01493-CV, 2003 WL 21544507 (Tex. App.—Dallas 2003, July 10, 2003, no pet.) (mem. op.).

In *B.E.A.R.*, an attorney without authority filed suit on behalf of a minor as next friend to request the trial court to name a person other than the minor's biological father as

8

his legal father. *Id.* at *1. The minor's biological father brought a Rule 12 motion challenging the attorney's authority to bring suit on the minor's behalf. *Id.* The trial court granted the biological father's Rule 12 motion, struck the attorney purporting to act as next friend, struck the pleadings the unauthorized attorney filed, and dismissed the case. *Id.* On appeal, the court affirmed the trial court's ruling because (1) the unauthorized attorney failed to carry his burden at the hearing to show sufficient authority to prosecute the suit and (2) no one authorized to prosecute the suit appeared at the hearing. *Id.* at 2. Of significance here, the court went on to hold that the trial court did not abuse its discretion by failing to appoint a guardian ad litem for B.E.A.R. and dismissing the case to adjudicate parentage, noting that "after the trial court struck B.E.A.R.'s pleadings pursuant to rule 12, there was no suit in which B.E.A.R. was a party." *Id.* at *3; see also *Sloan*, 693 S.W.2d at 784–85 (noting that unauthorized attorney's admission that he lacked authority of either party named in pleading he filed "vitiates the petition in its entirety.").

Freeman responds that *B.E.A.R.* is distinguishable in at least one critical aspect: in that case, once the unauthorized attorney was removed, there remained no additional parties to the lawsuit that could appear to prosecute the minor's claim as next friend. Here, the trial court's July 19 order complies with Rule 12's conditional mandate that pleadings should be stricken and the case dismissed only if "no person who is authorized to prosecute or defend appears." *See* Tex. R. Civ. P. 12. The court found Phelps and Leija were unauthorized to pursue the lawsuit, but the court made no such finding as to Freeman or Dinah Plant. Thus, the trial court's findings as to Phelps and Leija did not retroactively remove Freeman or Plant as parties to the lawsuit. *See* Tex. R. Civ. P. 7 ("Any party to a suit may appear and prosecute or defend his rights therein, either in person or by an attorney of the court."). Thus, from July 19 until July 21, when the trial court struck the pleadings and dismissed the case, Freeman and Plant were still parties to the lawsuit.

Moreover, the defendants and the trial court were aware that Freeman had testified concerning the medical-negligence claims arising out of the death of James's mother. The

9

defendants deposed Freeman at length about his son's claims, and used some of his statements to support Dr. Spooner's supplemental motion to show authority. When Phelps and Leija failed to respond to Dr. Spooner's motion and no evidentiary hearing was held, the trial court granted the motion, but nevertheless voiced its concerns about the fact that the parties were not given notice, particularly when a minor's claims were involved. This case is thus distinguishable from *B.E.A.R.* and other cases in which unauthorized attorneys file pleadings naming as parties people or entities with no relationship to the attorneys or any claim sought to be prosecuted. For these reasons, we conclude that Freeman satisfies the requirement that he was a party to the underlying lawsuit.

3

Lastly, we turn to the requirement that the party must show error on the face of the record. Review by restricted appeal affords the appellant a review of the entire case, just as in an ordinary appeal, with the only restriction being that any error must appear on the face of the record. *See Norman Commc'ns v. Tex. Eastman Co.*, 955 S.W.2d 269, 270 (Tex. 1997) (per curiam); *Conseco Fin. Servicing Corp. v. Klein Indep. Sch. Dist.*, 78 S.w.3d 666, 670 (Tex. App.—Houston [14th Dist.] 2002, no pet.). For purposes of a restricted appeal, the face of the record consists of all the papers on file in the appeal, including the reporter's record. *See Norman Commc'ns*, 955 S.W.2d at 270; *Osteen v. Osteen*, 38 S.W.3d 809, 813 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

Rule 306a requires that the court give notice of a dismissal order "to the parties or their attorney of record." *See* Tex. R. Civ. P. 306a(3); *Hubert v. Ill. State Assistance Comm'n*, 867 S.W.2d 160, 163 (Tex. App.—Houston [14th Dist.] 1993, no writ). A trial court's failure to give notice of a dismissal order is a denial of due process under the Fourteenth Amendment to the U.S. Constitution. *See Hubert*, 867 S.W.2d at 163 (citing *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84 (1988)).

Freeman contends that he did not receive notice of the trial court's July 21 order dismissing his case in accordance with the requirements of Rule 306a. According to

Freeman, once the trial court removed Phelps and Leija as his attorneys of record, the trial court should have treated him as an unrepresented, pro se plaintiff entitled to notice. Freeman acknowledges that there is no legal precedent from Texas appellate courts supporting his conclusion. Freeman maintains, however, that the legal effect of the trial court's order prohibiting Phelps and Leija from appearing was to leave James, a minor, unrepresented by counsel who could prosecute his claim or protect his legal interests. *See Am. Gen. Fire & Cas. Co. v. Vandewater*, 907 S.W.2d 491, 492 (Tex. 1995) (holding that the courts must evaluate whether a minor's interests have been properly protected and whether a deficiency in notice or due process has been shown when determining whether a trial court has obtained personal jurisdiction over a minor).

The defendants respond that Freeman cannot show error on the face of the record because the record does not affirmatively show that Freeman's attorneys did not receive notice. At most, the defendants assert, the record is silent regarding whether the trial court sent notice of the July 21 order dismissing the case to Leija or the Phelps & Leija law firm. Silence of the record is insufficient to show error on the face of the record. *See Ginn v. Forrester*, 282 S.W.3d 430, 433 (Tex. 2009); *Gen. Elec Co. v. Falcon Ridge Apartments, Joint Venture*, 811 S.W.2d 942, 944 (Tex. 1991). The defendants further contend that notice to the Phelps & Leija law firm is notice to the client, Freeman, because an attorney's knowledge or notice that is acquired during the existence of the attorney-client relationship is imputed to the client. *See, e.g., Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 584 (Tex. 2006) (per curiam); *McMahan v. Greenwood*, 108 S.W.3d 467, 480–81 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *Lehrer v. Zwernemann*, 14 S.W.3d 775, 778 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).

The defendants' arguments hinge on the existence of an attorney-client relationship between Freeman and the attorneys Phelps and Leija. They assert that, assuming the validity of the attorney/client agreement Freeman signed on May 24, 2008, that agreement evinces a contractual attorney/client relationship. They further argue that even after the

11

trial court removed Phelps and Leija from the case, their duties to their client continued. The defendants note that a withdrawing attorney must notify the client in writing of any additional settings or deadlines of which the attorney has knowledge at the time of the withdrawal and has not already notified the party. *See* Tex. R. Civ. P. 10; *Sims v. Fitzpatrick*, 288 S.W.3d 93, 100–101 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

Here, however, Phelps and Leija did not merely seek to withdraw; the trial court's orders and actions consistently treated these attorneys as removed from the case and no longer Freeman's attorneys of record. The trial court's July 19 order on Dr. Spooner's motion to show authority removed them from the case, and the trial court specifically ordered that Phelps and Leija "shall not be allowed to appear" on behalf of James. At the hearing on Phelps' post-judgment motions, Phelps attempted to argue his position, but the trial court denied his motions and admonished Phelps that he was "not the attorney of record." The trial court also reminded Phelps that "the attorneys of record were stricken from the case."

Freeman argues that any conclusion that notice to "former attorneys of record" is notice to the party would be inconsistent with *Mathis v. Lockwood*, 166 S.W.3d 743 (Tex. 2005) (per curiam). In that case, the supreme court held that Mathis's non-appearance for trial on a petition for declaratory judgment was not intentional or the result of conscious indifference. *Id*. at 744–45. Therefore, once Lockwood failed to prove that he had effected service of the trial setting on her and she denied receiving notice, Mathis was entitled to have the default judgment against her set aside. *Id.* at 745. Among other things, the court concluded that notice to the defendant's former attorney was no longer notice to her after her attorney withdrew. *Id.* The court explained that even if litigants had a duty to keep the court and parties apprised of their correct and current address, unless noncompliance was intentional rather than a mistake, "due process requires some lesser sanction than trial without notice or an opportunity to be heard." *Id.* at 746 (citing *Peralta v. Heights Med. Cntr.,* 485 U.S. 80, 85–86 (1988)).

12

According to Freeman, *Mathis* is analogous with respect to the question whether notice to a party's former attorney of record is legally sufficient to provide notice to the party for the purpose of satisfying Rule 306a(3), particularly when the party is a minor and the trial court never notified his next friend of the dismissal of his case. On the facts of this case, we conclude that notice to the removed attorneys should not be imputed to the party they purported to represent. As noted above, Rule 306a(3) requires that the court clerk immediately give notice of a dismissal order "to the parties or their attorney of record." *See* Tex. R. Civ. P. 306a(3). At the time of the July 21 dismissal order, Phelps and Leija had already been removed as the plaintiffs' attorneys of record. Therefore, given that the trial court and the parties were aware that real plaintiffs with viable claims were parties to the lawsuit at the time of dismissal, and there were no "attorneys of record" to receive notice at that time, the persons who should have received notice under Rule 306a(3) were the plaintiffs directly.[4]

We agree that Phelps and Leija had a duty to keep their clients informed of the course of the proceedings in the trial court, particularly when the motion to show authority had been filed and pending for over six months before it was ultimately granted and the case was dismissed as Rule 12 requires. But the trial court's order rendered these attorneys without authority to represent the plaintiffs in that court and prohibited them from appearing on the plaintiffs' behalf. We conclude that this circumstance is more analogous to cases in which a party is not represented or the party's attorney has withdrawn, as in *Mathis*. In these cases, the supreme court instructs that unrepresented parties are entitled to notice of dispositive settings in their cases as a matter of due process. *See LBL Oil Co. v. Int'l Power Servs., Inc.*, 777 S.W.2d 390, 390–91 (Tex. 1989) (holding failure to give pro se defendant notice of trial setting deprived him of due process); *Lopez v. Lopez*, 757 S.W.2d 721, 722–23 (Tex. 1988) (holding party who received no notice of trial setting after

---

[4] We note that if the defendants had really wanted to make sure that Freeman received notice of the dismissal, they easily could have served him personally. His home address appears both in his original petition and his deposition testimony.

13

her lawyer withdrew from representing her but continued to represent another party in the same case was not required to show a meritorious defense to obtain a new trial after post-answer default judgment because such a requirement would violate her due process rights); *see also Mabon Ltd. v. Afri-Carib Enters., Inc.*, No. 09-0715, ___ S.W.3d ___, 2012 WL 539385, at *1, 5 (Tex. Feb. 17, 2012) (holding due process requires that once bill-of-review plaintiff proves it had no notice of trial setting or default judgment, it need not establish that it diligently monitored the status of its case).

Although we express no opinion on the status of the attorney-client relationship between the plaintiffs and Phelps and Leija, it is undeniable that the trial court's order prohibited these attorneys from representing the plaintiffs in that court. And, because neither Phelps nor Leija were Freeman's "attorneys of record" for purposes of Rule 306a notice after July 19, 2010, any notice to them on or after that date cannot be imputed to Freeman. Moreover, the trial court stated affirmatively on the record that the plaintiffs, who were appearing on behalf of a minor, were not given notice of the dismissal. Therefore, error is apparent on the face of the record.

* * *

Because Freeman has satisfied the requirements for a restricted appeal, we grant his restricted appeal, reverse the trial court's judgment, and remand this case for further proceedings consistent with this opinion.[5] We dismiss Freeman's mandamus as moot.

/s/    Jeffrey V. Brown
          Justice

Panel consists of Justices Brown, Boyce, and McCally. (McCally, J., dissenting).

---

[5] The dissent's concerns about the analysis and disposition of this case are unwarranted. It is apparent that the plaintiffs in this case believed they had a valid, pending lawsuit until it was dismissed without notice to them. On the narrow facts presented here, that dismissal both violated Rule 306(a)(3) and deprived the plaintiffs of due process.